UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE M. TONEY, JR, | : |
| | : |
|      Plaintiff | : No. 4:CV-09-1412 |
| | : |
|   vs. | : (Complaint Filed 7/21/09) |
| | : |
| | : (Judge Muir) |
| B.A. BLEDSOE, <u>et</u> <u>al</u>., | : |
| | : |
|     Defendants | : |

## <u>MEMORANDUM AND ORDER</u>

January 29, 2010

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff, Joe M. Toney, Jr., an inmate currently confined
in the United States Penitentiary, Lewisburg ("USP-Lewisburg"),
Pennsylvania, filed the above captioned <u>Bivens</u>-styled[1] civil
rights action pursuant to 28 U.S.C. § 1331. Plaintiff alleges
that he was assaulted by his cellmate while handcuffed, and
was unable to defend himself. (Doc. 1, complaint). As a
result he sustained stab wounds to the chest, neck, head, back,
and mouth and a broken tooth. <u>Id</u>, The named defendants are
B.A. Bledsoe, Warden at USP Lewisburg; Krista Rear,

---

1. <u>Bivens v. Six Unknown Named Agents of Federal Bureau of</u>
<u>Narcotics</u>, 403 U.S. 388 (1971).

Associate Warden at USP Lewisburg; Senior Officer Jason Carpenter; and Senior Officer George Kulago. <u>Id</u>.

Presently pending before the Court is defendants' motion to dismiss or, in the alternative, for summary judgment. (Doc. 21). Defendants assert entitlement to summary judgment in their favor because Toney failed to exhaust available administrative remedies. The parties have fully briefed the issues and the motion is now ripe for disposition. For the reasons that follow, the Court will grant the defendants' motion for summary judgment.

**<u>Standard of Review</u>**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u>

2

issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence

3

which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

### Statement of Facts

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

4

On June 25, 2009, at approximately 9:45 a.m., defendant Kulago and another staff member escorted inmate Clark to the third floor of G-Block for the purpose of placing him in cell 324, which was already occupied by Toney. (Doc. 28, Ex. 5, Declaration of George Kulago, USP-Lewisburg Senior Officer, at ¶ 5). Defendant Kulago was responsible for carrying inmate Clark's property to his new cell assignment. Id.

As defendant Kulago and the other staff member were escorting inmate Clark to the cell, defendant Carpenter informed Toney he should submit to hand restraints as he was receiving inmate Clark as a cellmate. (Doc. 28, Ex. 4, Declaration of Jason Carpenter, USP-Senior Officer, Id. at ¶ 6). Toney stated he did not know inmate Clark, however, defendant Carpenter advised Toney that there was no reason for Clark not to be placed in the cell, as they were not seperatees, and as such he should accept inmate Clark as his cellmate. Id. Toney agreed to take a cellmate and, as is general practice, his hands were placed behind his back and placed in restraints in anticipation of accepting inmate Clark as his cellmate. Id.

When Clark arrived at the door of cell 324, still in the company of defendant Kulago and another staff member, defendant Carpenter opened the door and inmate Clark entered the cell. (Id. at ¶ 7). Defendant Kulago and the other staff member then began to walk down the range away from the cell after the door was closed and secured. Id.

After defendant Kulago and the other staff members left cell 324 in G-Block, defendant Carpenter ordered inmate Clark to come to the cell door and to place him hand in the "wicket"[2] so his restraints could be removed. Id. As each cell is equipped with only one wicket, defendant Carpenter was only able to remove the hand restraints from one inmate at a time. Id. at ¶ 8.

Defendant Carpenter first removed inmate Clark's hand restraints, and then directed Toney to place his hands in the "wicket" in order to have his hand restraints removed. Id. at ¶ 9. As Toney attempted to place his hands in the door's wicket, inmate Clark went to the back of the cell where he

---

2. A "wicket" is similar to a mail slot that is covered by a flat plate with hinges and a key lock that is used to: (a) pass items into the cell; (b) receive items from the cell; and (c) apply and remove hand restraints from inmates without the need to open the cell door. Id. at ¶ 8.

6

produced a weapon and proceeded to assault Toney, whose hands were still restrained, by stabbing him and punching him in the back of the head. Id.

Defendant Carpenter immediately called for assistance and ordered Clark to stop assaulting Toney and return to the door to submit to hand restraints. Id. As defendant Kulago began to walk down the range, away from cell 324, he heard defendant Carpenter state that Toney and Clark were fighting and there was a weapon involved. (Doc. 28, Ex. 5, Declaration of George Kulago, USP-Lewisburg Senior Officer, at ¶ 6). In response to Defendant Carpenter's request for assistance at cell 324, defendant Kulago immediately responded to the scene and placed a call for assistance over the radio. Id. Ignoring Defendant Carpenter's orders to cease assaulting Toney and submit to restraints, inmate Clark continued to assault Toney. Id. Once again, defendant Carpenter ordered inmate Clark to stop and submit to hand restraints. Id.; Carpenter declaration at ¶ 9). Clark responded by walking to the toilet and flushing the weapon down the toilet. Id. Clark then came to the door and

7

submitted to hand restraints. Id. Once additional staff and a lieutenant arrived at the scene, both Clark and Toney were removed from the cell. Id.

Toney was immediately taken to health services, for treatment of multiple lacerations, puncture wounds, and an avulsed right upper tooth. Id. at ¶10; Att. B, Injury Assessment. All superficial wounds were promptly cleaned and it was noted the bleeding had ceased. Id. One wound on the left side of his neck required sutures. Id.

Plaintiff has filed twenty-one administrative remedy requests since the June 25, 2009 incident. (Doc. 28, Att. B, Administrative Remedy Generalized Retrieval at 17-35). Of the twenty-one remedies, three of the remedies filed, were filed prior to the filing of the instant action. Id. However, none of the three have been exhausted to final review by the BOP's Central Office. Id.

On July 6, On July 6, 2009, Toney filed administrative remedy 545967-R1 with the Bureau of Prison's ("BOP") Northeast Regional Office, alleging that a correctional officer placed an inmate in his cell while Toney was in

restraints. (Doc. 28, Att. B, Administrative Remedy Generalized Retrieval at 26).

On July 7, 2009, administrative remedy 545967-R1 was rejected because the issue was not sensitive and it was not filed at the institutional level. Id.

On July 8, 2009, Toney filed administrative remedy request 546304-F1, alleging that he was assaulted on June 25, 2009, requesting "protective custody single cell status by the administration for the protection of [his] safety [as] a gay man", and claiming the assault "did something to [him] mentally." (Doc. 18, Att. E, Request for Administrative Remedy).

On July 14, 2009, Toney filed administrative remedy 548700-A1 with the BOP's Office of General Counsel in Washington, D.C., alleging he was assaulted by another inmate after staff placed him in restraints.[3] (Doc. 28, Att. B, Administrative Remedy Generalized Retrieval at 27).

---

3.  On August On August 17, 2009, administrative remedy 548700-A1 was rejected due to a non-sensitive issue and failure to file at the institutional level. (Doc. 28, Att. B, Administrative Remedy Generalized Retrieval at 27).

On July 16, 2009, administrative remedy 546304-F1 was denied by the Warden for the reasons:

> In your request for Administrative Remedy, you claim on June 25, 2009, you were stabbed multiple times in the chest, head, back, and mouth, and a tooth was broken. You claim this assault occurred while you were restrained behind your back and a staff member refused to open the door to let you out. You are requesting protective custody and single cell status for your safety. You claim you are a gay man and this incident did something to you mentally.
>
> An inquiry was conducted and you were assaulted on June 25, 2009, by your cell mate with some type of weapon. However, this was an isolated incident and your request for protective custody and single cell status is not warranted at this time. With respect to your mental status, Psychology staff are available and frequently make rounds in the housing units. You may also write an inmate request to a staff member requesting to see a Psychologist.
>
> Based on the above, your request for administrative remedy is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Customs House, Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of ths response.

(Doc. 28, Att. G, Administrative Remedy Response).

On July 21, 2009, Toney filed the instant action, seeking compensatory and punitive damages, as well as injunctive relief for the June 25, 2009 assault. (Doc. 1, complaint).

10

On July 23, 2009, Toney filed regional administrative remedy appeal 546304-R1 with staff at the BOP's Northeast Regional Office regarding the June 25, 2009 assault, alleging that he was assaulted by another inmate and staff failed to properly investigate the incident. (Doc. 28, Att. H, Regional Administrative Remedy Appeal).

On August 21, 2009, administrative remedy 546304-R1 was denied, and the response noted that: (a) a review of the incident revealed that single cell status was not warranted at that time; (b) Toney failed to inform staff of any specific concerns or conflicts he had with his cellmate; and (c) should Toney require psychological care, he should submit a request to the psychology department. (Doc. 28, Att. R, Response to Administrative Remedy 546304-R1). Although Toney was advised of his right to appeal the Regional Director's decision to the General Counsel, no further appeal was filed.

**Discussion**

Defendants contend that the instant action should be dismissed for Plaintiff's failure to exhaust all available administrative remedies with respect to all claims raised. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any
> jail, prison, or other correctional facility until
> such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 126 S.Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

12

without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir.2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. § 542.10.

13

Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. § 542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at § 542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at § 542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

It is patently clear from the chronological background of this action that Toney has failed to exhaust his administrative remedies before filing the above captioned action. Toney filed three administrative remedies prior to the filing of the instant action, on July 21, 2009. Two were rejected as improperly filed, and the third was not appealed to final review. Thus, because Toney did not wait to file his complaint until after he had received determinations from

14

administrative filings and completed the appeal process as to
those determinations, he has not met the exhaustion
requirements of the PLRA.

Moreover, to the extent that Toney exhausted his
administrative remedies after filing this complaint, these
attempts do not constitute proper exhaustion under the PLRA.
Courts have consistently held that exhaustion requires
completion of the entire administrative remedy process prior
to filing suit. Walker v. Health Services, Lewisburg
Penitentiary, 2007 WL 1395361 at * 3 (M.D.Pa 2007) (McClure,
J.)(finding "'exhaustion must occur prior to filing suit, not
while the suit is pending.'") (quoting Tribe v. Harvey, 248
F.3d 1152 (6th Cir. 2000)); Ibarra v. U.S.P. Allenwood, 2007
WL 465537 at *4-5 (M.D.Pa) (Conner, J.); Gibson v. Beard,
2006 WL 1946836 at *4 (M.D.Pa 2006) (Muir, J.); Hammock v.
Bebow, 2005 WL 2100693 at *2 (M.D.Pa 2005) (McClure, J.);
Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002)(holding
that exhaustion requires completion of the entire
administrative-remedy process prior to filing suit)(emphasis
added). See also Johnson v. Jones, 340 F.3d 624, 627-28 (8th
Cir.2003) (collecting cases and holding that "the district

15

court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory"); <u>Perez v. Wis. Dep't of Corr.</u>, 182 F.3d 532, 534-35 (7th Cir. 1999) (noting "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit"); <u>Neal v. Goord</u>, 267 F.3d 116, 122 (2d Cir. 2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court); <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998) (noting "the exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient." Thus, defendants are entitled to dismissal of the plaintiff's complaint.   See <u>Ahmed v. Dragovich</u>, 297 F.3d 201, 209, 210 (3d Cir. 2002).

An appropriate Order accompanies this Memorandum Opinion.

s/Malcolm Muir
MUIR
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOE M. TONEY, JR,                      :
                                       :
        Plaintiff                      : No. 4:CV-09-1412
                                       :
     vs.                               : (Complaint Filed 7/21/09)
                                       :
                                       : (Judge Muir)
B.A. BLEDSOE, et al.,                  :
                                       :
        Defendants                     :

## ORDER

January 29, 2010

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.  Defendants' motion for summary judgment
    (Doc. 21) is **GRANTED**. Judgment is hereby
    entered in favor of defendants and against
    the plaintiff.

2.  Plaintiff's motion for discovery (Doc. 15)
    is **DISMISSED** as moot.

3.  Plaintiff's preliminary injunction and
    temporary restraining order (Doc. 32) is
    **DENIED**.

4.  The Clerk of Court is directed to **CLOSE** this
    case.

5.  Any appeal taken from this order will be
    deemed frivolous, without probable cause,
    and not taken in good faith.


                        s/Malcolm Muir
                        MUIR
                        United States District Judge